IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVID S. ENGLISH,<br>    Plaintiff,<br><br>v.<br><br>ADVANCE AUTO PARTS, JOE<br>MATTSON, AND SARAH PARKER,<br>    Defendants. | Civil Action No.: 3:20-cv-00959<br>Judge Trauger/Frensley |

## REPORT AND RECOMMENDATION

### I.     INTRODUCTION AND BACKGROUND

This matter is before the Court upon Defendant's Motion for Summary Judgment. Docket No. 50. Along with its Motion, Defendant has contemporaneously filed a supporting Memorandum of Law (Docket No. 52), a Statement of Undisputed Material Facts (Docket No. 51), the Declaration with Exhibits of Mike Graham ("Graham Dec.")(Docket No. 51-1), and excerpts from Plaintiff's Deposition ("Plaintiff's Dep.")(Docket No. 51-2).

Plaintiff has filed a document entitled "Plaintiffs [*sic*] Statement of Undisputed Material Facts in Response to Defendants [*sic*] Motion for Summary Judgment," with Exhibits. Docket No. 54. The Court will construe Plaintiff's submission as a Response to the instant Motion and notes that Plaintiff has responded to Defendant's Statement of Undisputed Material Facts in Exhibit B, attached to his Response.[1] *Id.*, p. 7-10.

Defendant has filed a Reply to Plaintiff's Response. Docket No. 55. Defendant has also filed a Reply to Plaintiff's responses to its Statement of Undisputed Material Facts. Docket No.

---

[1] Plaintiff's responses to Defendant's Statement of Undisputed Material Facts, however, fail to comply with either the Local Rule 56.01(c) or Federal Rule 56.

1

56.

Plaintiff filed this action alleging discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA"). Plaintiff avers that he has been discriminated against on the basis of his race, color, gender, religion, national origin, age, and disability, and appears to claim that he has been the subject of a hostile work environment and has been unlawfully retaliated against.

For the reasons discussed below, the undersigned finds that there are no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law. Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 50) be GRANTED, and that this action be DISMISSED WITH PREJUDICE.

## II. UNDISPUTED FACTS[2]

### A. Declaration of Mike Graham

Mike Graham has been employed by Defendant since March 2015. Graham Dec., ¶ 2. At the time of his Declaration, Mr. Graham was a Vice President of Operations for Market 278 (consisting of areas in several states, including eastern Tennessee), and has been employed in that role since February 2021. *Id.* Prior to that, Mr. Graham was a director of field Human Resources; and prior to that, he was Sr. Human Resources Manager for the region encompassing the Advance Auto stores where Plaintiff worked. *Id.*

---

[2] Plaintiff's responses to Defendant's Statement of Undisputed Facts did not comply with the Local or Federal Rules. Regarding the facts to which Plaintiff failed to respond, those facts are deemed undisputed pursuant to Local Rule 56.01(f). The facts to which Plaintiff did respond, Plaintiff's responses failed to contain the required citation and are not in a form required either by Local Rule 56.01(c) or Fed. R. Civ. P. 56(c)(1). Accordingly, unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

Mr. Graham is familiar with Defendant's policies and business records. *Id.*, ¶ 3. Defendant is committed to being an equal opportunity employer and prohibits discrimination, harassment, and retaliation based on any factor protected by law. *Id.*, ¶ 4. Company policies provide a procedure for reporting harassment and prohibit retaliation against any employee who reports harassment of any kind. *Id.*, Ex. A.

Defendant hired Plaintiff in June 2018 to work part-time as a driver at one of its stores in eastern Tennessee. *Id.*, ¶ 5. On April 18, 2019, Plaintiff claimed to have suffered an injury while on the job at the store. *Id.*, ¶ 6; Ex. B. Plaintiff's District Manager at the time, Jon Mattson, attempted to submit the claim to Defendant's workers' compensation administrator (Sedgwick) via facsimile the next day. *Id.*

On April 24, 2019, Defendant prepared a "Final Corrective Interview" (writeup) to counsel Plaintiff regarding multiple issues that had been brought to the company's attention regarding his behavior in the workplace. *Id.*, ¶ 7; Ex. C.

On April 25, 2019, Plaintiff made a Hotline Phone complaint to Defendant alleging age and race discrimination by Jon Mattson and store manager Sarah Parker. *Id.*, ¶ 8; Ex. D. Mr. Graham investigated his complaint. *Id.*

On May 2, 2019, Plaintiff made a second Hotline Phone complaint, alleging "unethical practice" by Mr. Mattson and Ms. Parker. *Id.*, ¶ 9; Ex. E. In this complaint, Plaintiff brought up essentially the same issues he had raised in his April 25, 2019 complaint. *Id.*

On May 2, 2019, Defendant learned that the facsimile number Mr. Mattson had listed for the Sedgwick workers' compensation claims department was incorrect and that Plaintiff's workers' compensation claim had not been submitted. *Id.*, ¶ 10. The same day, Defendant sent Plaintiff's workers' compensation claim to Sedgwick again, after the submission problem was

3

resolved. *Id.*; Ex. B.

On May 13, 2019, Plaintiff received the write-up that had been prepared on April 24, 2019. *Id.*, ¶ 11; Ex. C. As per the write up, Plaintiff was warned that he should not engage in certain behavior moving forward. *Id.* However, Defendant did not further discipline Plaintiff, nor did it make any changes to the terms or conditions of Plaintiff's employment (such as a demotion or reduction in pay) as a result of the write-up. *Id.*

Defendant did not make the decision as to whether to process or deny Plaintiff's workers' compensation claim once it was submitted to Sedgwick by Mr. Mattson. *Id.*, ¶ 12. That decision was made by a Sedgwick claims administrator, as is the customary practice for workers' compensation claims made by Defendant's employees. *Id.*

Mr. Graham reviewed Plaintiff's claim that his hours had been reduced and found that this claim, as well as his other claims, was not substantiated. *Id.*, ¶ 13. According to company records, Plaintiff's hours were consistent and in line with what was expected for a part-time team member. *Id.*

Defendant's records show that from April 25, 2019 to the end of his employment, Plaintiff was not scheduled to work any Sundays. *Id.*, ¶ 14; Ex. F.

On May 22, 2019, Mr. Graham completed his investigation of Plaintiff's Hotline complaints and found that Plaintiff's complaints were unsubstantiated. *Id.*, ¶ 15.

Plaintiff voluntarily resigned his employment with Defendant on September 3, 2019 after his workers' compensation claim was settled. *Id.*, ¶ 16; Ex. G.

B. **Excerpts from Plaintiff's Deposition**

Plaintiff's store manager was Sara Parker. Plaintiff's Dep., p. 53. Plaintiff had a positive relationship with Ms. Parker from the date of his hire until January 2019, when she learned he was

4

aware she was having an affair with a corporate customer who was a friend of Plaintiff. *Id.* From that point forward, Ms. Parker's attitude toward Plaintiff shifted and she began harassing him, which consisted of constantly yelling at him. *Id.*, pp. 55, 105. However, as a store driver, Plaintiff was in the store only 20% of the time, and he did not see Ms. Parker often. *Id.*, p. 55. The remainder of the time, he was out making deliveries. *Id.*

Ms. Parker was responsible for setting Plaintiff's work schedules. *Id.*, p. 65. Ms. Parker began cutting Plaintiff's work hours. *Id.*

Plaintiff attended religious services on Sunday, and Defendant's records show that, from April 25, 2019 to the end of his employment, Plaintiff was not scheduled to work on Sundays. *Id.*, p. 117; Graham Dec., Ex. F, Defendant's work schedule.

Plaintiff filed a claim of discrimination against Defendant with the Tennessee Human Rights Commission ("THRC") and a claim with the Tennessee Bureau of Workers' Compensation, appealing his workers' compensation denial on May 13, 2019. *Id.*, p. 150-51; Graham Dec., Ex. C.

Plaintiff testified that the April 24, 2019, Final Corrective Interview he was issued was made in response to his filing the charge with the THRC and the appeal of his workers' compensation denial with the Tennessee Bureau of Workers' Compensation. *Id.*, p. 147-51.[3]

No one employed by Defendant made harassing, disparaging, or negative comments to Plaintiff regarding his religion, but Plaintiff believed his religion was being attacked because he was the subject of false claims that he was discussing his religious beliefs while on the clock in

---

[3] Although Plaintiff testified that the April 24, 2019, Final Corrective Interview he was issued was made in response to his filing the charge with the THRC and the appeal of his workers' compensation denial with the Tennessee Bureau of Workers' Compensation, the April 24, 2019 Final Corrective Interview was made prior to Plaintiff's May 13, 2019 THRC claim and workers' compensation appeal and therefore could not have been made in response to it.

violation of company policy. *Id.*, p. 133.

Plaintiff's ADA claim is based on Defendant's alleged failure to timely report his workers' compensation claim, the denial of his workers' compensation claim, and Defendant's failure to initially follow his restrictions associated with his workplace injury. *Id.*, p. 84, 93.

Although Defendant did not initially honor work restrictions placed on Plaintiff after he suffered his workplace injury, Defendant ultimately honored the restrictions after a brief period. *Id.*, p. 93. Prior to that, Defendant was able to work his way around his restrictions by asking others to assist with certain tasks. *Id.* When Plaintiff reported the restriction violation to Mr. Mattson, Mr. Mattson ensured the restrictions were followed, and he did not discipline Plaintiff for having asked others to help him. *Id.*

Plaintiff voluntarily resigned his employment in September 2019 as part of the settlement of his workers' compensation appeal with Defendant. *Id.*, p. 153; Graham Dec., ¶ 16, Ex. G.

### III.  LAW AND ANALYSIS

#### A.  Fed. R. Civ. P. 56(c)

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.

Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56(c)(1) sets forth the requirement to support factual assertions as follows:

> **(c)** **Procedures.**
>
> **(1)** ***Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

**B.** **Local Rules 56.01(c) and (f)**

With regard to responses to the requisite Statement of Undisputed Facts filed contemporaneously in support of a Motion for Summary Judgment, Local Rule 56.01(c) provides:

> **c)** **Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. *Each disputed fact must be supported by specific citation to the record.*
>
> . . .
>
> **f)** **Failure to Respond**. If a timely response to a moving party's statement of material facts, or a non-moving party's statement of additional facts, is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment.

7

### C. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

Title VII of the Civil Rights Act of 1964 ("Title VII") protects employees from discrimination on the basis of an individual's race, color, religion, sex, or national origin, and provides, in part:

> It shall be an unlawful employment practice for an employer--
>
> 1. to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> 2. to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

Federal courts do not have jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC Charge of discrimination, or the claim can reasonably be expected to grow out of the EEOC Charge. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998), *citing Ang v. Procter & Gamble Co.,* 932 F.2d 540, 544-45 (6th Cir. 1991)). Thus, as a prerequisite to bringing a Title VII discrimination claim in federal court, a claimant is required to file a Charge of discrimination or retaliation with the EEOC and is precluded from seeking judicial review until the Commission has made a final disposition of his claim. 42 U.S.C. § 2000e-5. *See also, United Air Lines, Inc. v. Evans*, 431 U.S. 553, 554 (1977). The wording of the allegations in the EEOC Charge does not, however, have to be exact or all-encompassing; rather, the court may consider allegations not explicitly stated in the EEOC Charge if those allegations could reasonably be expected to grow out of the Charge of discrimination. *Tipler v E. I. du Pont de Nemours & Co.*, 433 F.2d 125, 131 (6th Cir. 1971), *citing Sanchez v. Standard*

8

*Brands, Inc.,* 431 F.2d 455, 465-66 (5th Cir. 1970); *King v. Georgia Power Co.*, 295 F. Supp. 943 (N.D. Ga. 1968)).

In order to establish a prima facie case of discrimination in violation of Title VII, a plaintiff must prove that,

1. he is a member of a protected class;

2. he was qualified for his job and performed it satisfactorily;

3. despite his qualifications and performance, he suffered an adverse employment action;[4] and

4. that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class.

*Johnson v. University of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)) (Footnote added).

A plaintiff may establish a claim of discrimination under Title VII either by introducing direct evidence of discrimination, or by proving circumstantial evidence that would support an inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000), *citing Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

Under the direct evidence approach, once the plaintiff introduces evidence that the employer terminated him because of his protected status, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even had it not been motivated by

---

[4] An adverse employment action is one that causes a materially adverse change in a term of employment, such as significantly diminished responsibilities, termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. *See Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885-86 (6th Cir. 1996).

discrimination. *Johnson*, 215 F. 3d at 572, *citing Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994), *citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989).

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as later clarified by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248 (1981). The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to first establish a prima facie case of discrimination. *Id.* If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.* If the defendant carries this burden, the plaintiff must then prove that the proffered reason was actually pretextual. *Id.* The plaintiff may establish pretext by showing that: 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; or 3) the stated reasons were insufficient to explain the defendant's action. *Id. See also, Cicero v. Borg-Warner Automotive, Inc.,* 280 F.3d 579, 589 (6th Cir. 2002). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

**D.     Age Discrimination in Employment At of 1967 ("ADEA"), 29 U.S.C. § 621, et seq**

The ADEA applies to employers and states in relevant part:

It shall be unlawful for an employer—

1. to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

2. to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or

> otherwise adversely affect his status as an employee, because of such individual's age; or
>
> 3. to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623.

A prima facie case of age discrimination under the ADEA requires a plaintiff to demonstrate that he or she:

> 1. is a member of a protected class (*i. e.* was at least forty (40) years of age at the time of the alleged discrimination);
>
> 2. is qualified for the position;
>
> 3. suffered an adverse employment action; and
>
> 4. was treated differently than, or replaced by, a younger, similarly situated person outside of the protected class.

*Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538-539 (6th Cir. 2002), *citing Kline*, 128 F.3d at 349.

Age discrimination claims brought pursuant to the ADEA are likewise evaluated under the *McDonnell Douglas-Burdine* tripartite test discussed above. *Wexler*, 317 F.3d at 574, *citing Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998).

### E. Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111, et seq.

The Americans with Disabilities Act ("ADA") protects employees from discrimination by their employer based on their disabilities. In order to prevail on a claim of unlawful employment discrimination under the ADA, a plaintiff must demonstrate that:

> 1. he or she is, or was perceived as, an individual with a disability;
>
> 2. he or she is otherwise qualified to perform the job requirements either:
>
>    a. with or without a reasonable accommodation from the employer, or

11

Case 3:20-cv-00959 Document 57 Filed 12/22/21 Page 11 of 16 PageID #: 554

>   b. with an alleged "essential" job requirement eliminated; and

> 3. he or she suffered an adverse employment action "because of" the disability.

*Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1178 (6th Cir. 1996). *See also* 42 U.S.C. §§ 12111 and 12112.

### F. Hostile Work Environment

In order to establish a prima facie claim of hostile work environment under Title VII, the ADA, or the ADEA, a plaintiff must establish that:

> 1. he is a member of a protected class;
>
> 2. he was subjected to unwelcome harassment;
>
> 3. the harassment was based on a protected classification;
>
> 4. the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or abusive work environment; and
>
> 5. the existence of employer liability.

*Faragher v. City of Boca Raton*, 524, U.S. 775, 787-88 (1988).

A hostile work environment is established upon proof of conduct that is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Savings Bank, FSB,* 477 U.S. at 67, *quoting Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982).

In determining whether an environment is hostile, a court looks to the totality of the circumstances, which may include the following considerations: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance; whether it unreasonably interferes with an employee's work performance; and the employee's psychological well-being." *Campbell v. Fla. Steel Corp.,* 919 S.W.2d 26, 32 (Tenn. 1996). Employee complaints about the "ordinary tribulations of the workplace, such as the

12

sporadic use of abusive language, gender-related jokes, and occasional teasing" will not suffice to entitle a plaintiff to relief under Title VII. *Baugham v. Battered Women, Inc.,* 211 Fed. App'x 432, 438 (6th Cir. 2006), *quoting Faragher,* 524 U.S. 775, 788 (1998). It is only "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' [that] Title VII is violated." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993), *quoting Meritor*, 477 U.S. 57, 65, 67 (1986). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. 775, 788 (1998).

### G. Retaliation

In order for a plaintiff to prevail on a claim of retaliation under Title VII, the ADA, or the ADEA, the plaintiff must establish that:

1. he engaged in activity protected by one of the statutes;
2. the defendant knew that he engaged in the activity;
3. he was subjected to an adverse employment action; and
4. the adverse action would not have occurred "but for" the protected activity.

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2520 (2013).

### H. The Case at Bar

Plaintiff avers that Defendant discriminated and retaliated against him in violation of Title VII, the ADA, and the ADEA, and further avers that Defendant subjected him to a hostile work environment.

As an initial matter, Plaintiff has adduced no evidence whatsoever in a form required by Fed. R. Civ. P. 56 to establish the existence of a genuine issue of material fact on any of his claims.

He has failed to respond to some statements of fact and, to the extent that Plaintiff did cursorily respond to others, his responses failed to provide the requisite citations to the record. *See* Docket No. 54. Accordingly, there are no genuine issues of material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

Addressing first Plaintiff's claims of discrimination and retaliation under Title VII, the ADA, and the ADEA, Plaintiff has failed to establish a prima facie case of discrimination and retaliation under these statutes because the undisputed facts demonstrate that he did not suffer the requisite adverse employment action. The Plaintiff has failed to show that he suffered any loss of pay or benefits, detrimental change in responsibilities or unfavorable change to the terms and conditions of his employment. This is true not only generally, but also for the specific allegations made by Plaintiff regarding his request for transfer and alleged untrue allegations brought against him by coworkers. With regard to his ADA claim there is no evidence that the delay in submission of his claim was unreasonable under the circumstances or different in any way from the way that claims were treated for any other individuals. With regard to his medical restrictions is clear that Plaintiff was able to perform his job functions during the brief period of time until he reported his restrictions were being violated to his district manager who ensured thereafter that they were followed. Additionally, Plaintiff has failed to demonstrate that he was treated less favorably than any similarly situated person outside the protected class. There is simply no evidence that anyone outside his protected category was treated more favorably than the Plaintiff with regard to the claims he has asserted.

Plaintiff's retaliation claims fail for similar reasons. First, it is undisputed that the Defendant attempted to submit Plaintiff's worker's compensation claim to its administrator prior to Plaintiff filing any complaint with human resources. There is no evidence that the error in

14

Case 3:20-cv-00959    Document 57    Filed 12/22/21    Page 14 of 16 PageID #: 557

submission was related to the complaint nor that it could be since the complaint was not made until after the initial submission. Further, the erroneous submission was corrected even after the Defendant was aware of the Plaintiff's human resources complaint undermining Plaintiff's argument that the failure to submit the claim was in retaliation for the human resources complaint. Similarly, the Plaintiff has failed to adduce any evidence that the Defendant was involved in the determination regarding the worker's compensation claim. Instead, the decision was made by a third party against whom no complaint had been made nor is there any evidence that they were aware any complaints had been made.

Plaintiff's claim of constructive discharge also fails in that he cannot establish that the circumstances were so intolerable that no reasonable person would stay. Instead, it appears that his resignation was agreed upon by the Parties as a term of resolving his worker's compensation claim. This was wholly unrelated to the terms and conditions of his employment. In any event, nothing about the Plaintiff's allegations suggests the working conditions were so intolerable that a reasonable person would have felt compelled to quit. Because Plaintiff cannot establish all the requisite elements of these claims, Defendant is entitled to a judgment as a matter of law on Plaintiff's discrimination and retaliation claims under Title VII, the ADA, and the ADEA.

Turning to Plaintiff's hostile work environment claim, Plaintiff has likewise failed to establish the requisite elements. Specifically, the undisputed facts establish that the alleged harassment was not based on any protected class, but rather, was the consequence of Plaintiff learning that Ms. Parker was having an affair with one of Defendant's corporate customers who happened to be friends with Plaintiff. Additionally, Plaintiff spent 80% of his time out making deliveries and away from Ms. Parker and there is no evidence that the alleged harassment was physically threatening or humiliating. This alleged harassment was neither severe nor pervasive as

required by the law to support a claim. Further, to the extent that Plaintiff relies upon the other alleged mistreatment in the workplace discussed above, it fails to support his claim of a hostile work environment for the same reasons. Thus, Plaintiff cannot establish that the alleged harassment rose to a level that would constitute an actionable hostile work environment claim, and Defendant is entitled to a judgment as a matter of law.

### IV. CONCLUSION

For the reasons discussed above, the undersigned finds that there are no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law. Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 50) be **GRANTED**, and that this action be **DISMISSED WITH PREJUDICE**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**